Circle "S" Industries, Inc. ("CSI"), American Fine Wire Corp. ("AFW"), and American Fine Wire, Ltd. ("AFWL") — referred to collectively as "the plaintiffs" — appeal from an order denying their motion to appoint an arbitrator to determine whether Peter Douglas had failed to comply with the terms of a consent judgment entered in the plaintiffs' action against Douglas, Steven R. Berryman, and Douglas Fine Wire Corporation. We reverse and remand.
The plaintiffs, three affiliated corporations,[1] produce and market "interconnection bonding wire," that is, small diameter wire used in "micro-electronics." In August 1989, Douglas and Berryman resigned their positions as "key employees" of the plaintiffs and organized the Douglas Fine Wire Corporation. The plaintiffs subsequently sought and obtained a preliminary injunction against the defendants' competing in the fine wire industry. While the judgment granting the preliminary injunction awaited review in this Court, the parties consented to a judgment on the basis of a negotiated settlement agreement.
The consent judgment contained the following pertinent provisions regarding the obligations of Berryman and Douglas:
"III. General Obligations of Berryman and Douglas
". . . .
 "2. During the period from the date of entry of the Consent Decree and continuing to and including December 31, 1991, DFWC, Berryman, and Douglas . . . will not engage in the Fine Wire Business, or in any business which is competitive . . . with the Fine Wire Business, directly or indirectly, either on their own account or while employed by or associated with another . . . entity. . . . Douglas is specifically authorized to render his services . . . to certain corporations . . . which have purchased products from AFW or AFWL . . ., provided, however, that such consulting services shall in no way involve or relate to the Fine Wire business and provided further that . . . Douglas shall not render any services as a consultant or otherwise to any of the following major customers of AFW and AFWL: Intel, Motorola, National Semiconductor, and Texas Instruments. . . .
". . . .
 "4. The parties stipulate and agree that the products manufactured by AFW and AFWL are sold in competition with a small number of manufacturers, located in Singapore, Japan, Korea, Switzerland, Germany and the United States, in worldwide markets. The parties further stipulate and agree
that the obligation of DFWC, Berryman and Douglas not to engage in the Fine Wire Business as set forth in this Consent Decree will fail in its essential purpose unless it encompasses all countries, including the entire United States, in which AFW and AFWL sell, or actively seek to sell, their products or otherwise conduct business. Accordingly, the covenant not to compete as set forth in this Consent Decree shall encompass that geographic region."
(Emphasis added.)
The consent judgment also contained the following provisions:
"V. Agreement to Arbitrate
 "1. All claims, demands, disputes, controversies and differences of any kind whatsoever that may arise between the parties concerning or with respect [to] or in connection with the restrictions on disclosure of this Consent Decree to third parties, the . . . [o]bligations of Berryman and Douglas, [and] the . . . [o]bligations of CSI, AFW and AFWL, . . . shall be settled by arbitration as herein set forth.
". . . .
 "7. The parties agree that the matters which may be arbitrated under this Consent Decree constitute transactions involving commerce among the several states or with foreign nations and, therefore, the parties further agree that *Page 331 the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. shall govern the enforceability of this arbitration agreement."
(Emphasis added.)
On October 28, 1991, the plaintiffs, alleging that Douglas had violated his noncompetition obligations by "orchestrat[ing] the financing and formation of a new fine wire company . . . in Huntsville, Alabama," filed a motion requesting the appointment of an arbitrator to resolve their claims. The trial court denied the plaintiffs' motion for the appointment of an arbitrator.
It is undisputed that the consent judgment, per se, contemplates substantial interstate and international commerce. Douglas, however, contends that the Federal Arbitration Act ["FAA"] is inapplicable to this dispute, and, consequently, that the plaintiffs' claims are nonarbitrable, because, he argues, the alleged breach of the consent judgment — the organization of a competitor company in Huntsville — occurred entirely within Alabama. Thus, he contends that whether the Federal Arbitration Act ("FAA") is invoked is determined not by the scope of the consent judgment, but by the locus actus of the alleged breach of the judgment. We disagree.[2]
Under Alabama law, " 'the slightest nexus of the agreement with interstate commerce will bring the agreement within the ambit of the FAA.' " Ex parte Brice Building Co.,607 So.2d 132, 134 (Ala. 1992) (quoting and applying the standard set forth in Ex parte Costa Head (Atrium), Ltd., 486 So.2d 1272,1275 (Ala. 1986)). These cases do not support the proposition that clauses invoking the FAA are ineffectual, in a case like the present one, in which the record reveals substantial interstate commercial activity, nor do they support the contention that the locus actus, rather than the scope of the contract, determines the applicability of the FAA. Consequently, the order of the trial court is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
HORNSBY, C.J., and STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] CSI is the holding company for AFW and AFWL.
[2] Section 2 of the FAA provides:
 "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."